275 N.J. Super. 488 (1994)
646 A.2d 522
MARCELINO SALDANA AND JUANA SALDANA, OLIO ROWAN, NOEMI SANTANA, JUAN AND EDITH ROSADO, GEORGE AND HELEN BROWN, TEODOSIA LOPEZ, RODOLFO AND IDA ROBLEDO, PLAINTIFFS-APPELLANTS,
v.
LEONARD J. DIMEDIO, WALTER RICHARDSON, AND CITY OF CAMDEN, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 7, 1994.
Decided August 18, 1994.
*491 Before Judges MICHELS, SKILLMAN and WEFING.
William J. Silsby argued the cause for appellants (Rev. David R. Brooks, attorney; Rev. Brooks, of counsel; Robert F. Williams, Edward N. Adourian, Jr., and Mr. Silsby, on the brief).
Arthur E. Donnelly, III, argued the cause for respondents (Montano, Summers, Mullen, Manuel, Owens & Gregorio, attorneys; Mr. Donnelly, of counsel and on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Plaintiffs Marcelino and Juana Saldana, Olio Rowan, Noemi Santana, Juan and Edith Rosado, George and Helen Brown, Teodosia Lopez, and Rodolfo and Ida Robledo appeal from a summary judgment of the Law Division entered in favor of defendants City of Camden (Camden), Leonard J. DiMedio (DiMedio) and Walter Richardson (Richardson) in this property damage tort claims action.
Plaintiffs instituted this action against Camden and two of its employees, DiMedio, the Chief Building Inspector, and Richardson, the Director of Public Works, to recover damages sustained by their real property as a result of a series of fires. The fires *492 were caused by unauthorized persons in vacant buildings owned by Camden, and the fires eventually spread to plaintiffs' properties. Camden obtained title to the vacant properties through tax foreclosures. The gravamen of the action is that Camden and its employees failed to maintain or secure vacant city-owned abandoned buildings and permitted unauthorized persons to occupy them and set fire that spread to their adjoining properties. More precisely, plaintiffs charged that (1) Camden and its employees negligently maintained or secured vacant buildings under their ownership and control; (2) Camden deprived them of their respective properties without due process of law in violation of Article I, paragraph 1, of the New Jersey Constitution; (3) Camden deprived them of their property in violation of the doctrine of fundamental fairness; (4) Camden took their property without just compensation in violation of Article I, paragraph 20, of the New Jersey Constitution; and (5) DiMedio and Richardson failed to exercise reasonable care in the discharge of their duties.
The proofs on the motion for summary judgment established that prior to the fires, Camden had received various complaints from people in the neighborhood regarding the dangerous conditions of the vacant city-owned buildings. Camden's own inspection documents revealed that certain buildings were dangerous and should be demolished or otherwise secured. At the time of the fires, DiMedio, as Chief Building Inspector, and Richardson, as Director of Public Works, were the officials most directly responsible for the maintenance and repair of city-owned property. DiMedio followed certain procedures for city-owned buildings determined to be "unsafe." He would first identify the property and then determine whether to demolish it or board it up. A report concerning one of the buildings adjacent to the properties owned by several of the plaintiffs indicated that the building was a hazard and should be demolished. DiMedio testified that demolition would occur only if a review of the report on the building revealed that it was an extreme emergency. Estimated cost of demolition during the 1980s ranged from about $10,000 to $18,000 per building.
*493 Once DiMedio's department determined whether a building was to be demolished or boarded up, Richardson's department would act upon that determination. During his tenure, Richardson indicated the number of vacant buildings to be approximately 4,500 to 5,000, and that this number changed daily. Richardson was unsure of the percentage of these buildings owned by Camden. According to Richardson, Camden had to continually board up certain buildings, but they would not remain boarded up. He further testified that Camden had limited money and resources with which to deal with these problems. Additionally, Camden Fire Marshall Herbert Leary testified that abandoned and vacant buildings increased the risks of fire hazards. Plaintiffs' expert, Thomas R. Knoche, found Camden's procedures "regarding board-up and demolition [to be] disorganized and unsound."
Following pretrial discovery proceedings, defendants moved for summary judgment, contending that (1) the buildings were not in a dangerous condition as defined by N.J.S.A. 59:4-1a; (2) they were immune from enforcing the housing codes pursuant to N.J.S.A. 59:2-4 and 59:3-5; (3) their discretionary activities were immune pursuant to N.J.S.A. 59:3-2 and N.J.S.A. 59:2-3; (4) plaintiffs were not deprived of due process or fundamental fairness, and this property was not taken without just compensation; and (5) Richardson and DiMedio were immune from any actions while acting under the authority of law pursuant to N.J.S.A. 59:3-4. The trial court granted summary judgment in favor of Camden on the ground that it could not be held liable for the fire damage to plaintiffs' properties under N.J.S.A. 59:4-2. The trial court held that defendants were immune under "any theory [of liability] based upon the failure to enforce the Uniform Construction Code/regulations" under N.J.S.A. 59:2-3 and N.J.S.A. 59:2-4. However, the trial court denied the motion of DiMedio and Richardson, holding that they were not immune from liability under N.J.S.A. 59:3-2a or N.J.S.A. 59:3-2d, nor were they entitled to immunity under N.J.S.A. 59:3-3. The trial court also held that even if the immunity granted public employees when acting in good faith in the execution or enforcement of any law under *494 N.J.S.A. 59:3-3 applied, a genuine issue of fact existed as to whether DiMedio and Richardson acted in "good faith." The trial court declined to rule on plaintiffs' claims that they were deprived of the property without due process because the matter was proceeding against the individual defendants, and held that plaintiffs' claims of an unconstitutional taking of their property were premature and should await the outcome of pending appeals from Camden's demolition orders. On reconsideration, the trial court held that DiMedio and Richardson were entitled to summary judgment. This appeal followed.

I.
Plaintiffs contend generally that the trial court erred in granting summary judgment in favor of defendants because they were entitled to proceed against these defendants under the provisions of N.J.S.A. 59:2-1 et seq. and N.J.S.A. 59:4-1 et seq.
It is fundamental that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2. The moving party's burden on such a motion is to exclude all reasonable doubt as to the existence of any genuine issue of material fact. All inferences of doubt are drawn against the moving party and in favor of the opponent of the motion. "The papers supporting the motion are closely scrutinized and the opposing papers indulgently treated." Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 74-75, 110 A.2d 24 (1954); see also Brenner and Co. v. Perl, 72 N.J. Super. 160, 166, 178 A.2d 19 (App.Div. 1962). If there is the slightest doubt as to the existence of a material issue of fact, the motion should be denied. Garley v. Waddington, 177 N.J. Super. 173, 179, 425 A.2d 1084 (App.Div. 1981); Linn v. Rand, 140 N.J. Super. 212, 216, 356 A.2d 15 (App.Div. 1976).
*495 Furthermore, summary judgment should not be granted where the adjudication of such a motion would constitute what is in effect a trial by pleadings and affidavits involving issues of fact. Shanley & Fisher, P.C. v. Sisselman, 215 N.J. Super. 200, 211-12, 521 A.2d 872 (App.Div. 1987). Although summary judgment serves the valid purpose in our judicial system of protecting against groundless claims and frivolous defenses, it is not a substitute for a full plenary trial. United Advertising Corp. v. Metuchen, 35 N.J. 193, 195-96, 172 A.2d 429 (1961). In short, summary judgment should be denied unless the right thereto appears so clearly as to leave no room for controversy. Shanley & Fisher, P.C. v. Sisselman, supra, 215 N.J. Super. at 212, 521 A.2d 872. Considered in this light, the trial court erred in granting defendants summary judgment with respect to plaintiffs' property damage Tort Claims Act cause of action. See also Henschke v. Borough of Clayton, 251 N.J. Super. 393, 398, 598 A.2d 526 (App.Div. 1991); McDermott v. TENDUN Constructors, 211 N.J. Super. 196, 205-06, 511 A.2d 690 (App.Div.), certif. denied, 107 N.J. 43, 526 A.2d 134 (1986).
Under the New Jersey Tort Claims Act (Act), N.J.S.A. 59:1-1 et seq., public entities shall be liable for their negligence only as set forth in the Act and in accordance with the fair and uniform principles established therein. See Tice v. Cramer, 133 N.J. 347, 355, 627 A.2d 1090 (1993); Pico v. State, 116 N.J. 55, 59, 560 A.2d 1193 (1989). With regard to public entities, the Act is intended "to reestablish a system in which immunity is the rule, and liability the exception." Bombace v. City of Newark, 125 N.J. 361, 372, 593 A.2d 335 (1991). The analysis for determining public-employee liability under the Act differs from the analysis for determining public-entity liability. The Supreme Court in Chatman v. Hall, 128 N.J. 394, 402-04, 608 A.2d 263 (1992), explained this difference as follows:
In determining the issues posed by this appeal, we rely on the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 to:12-3 (Act), which governs claims against public entities and public employees. We emphasize initially that the Act reestablishes sovereign immunity for public entities, but does not similarly shield public employees. *496 Longo v. Santoro, 195 N.J. Super. 507, 515, 480 A.2d 934 (App.Div.), certif. den., 99 N.J. 210, 491 A.2d 706 (1984). A public entity is deemed "not liable for an injury" except as provided in the Act, N.J.S.A. 59:2-1. In contrast, a public employee "is liable for injury" except as otherwise provided. N.J.S.A. 59:3-1 ... That differential treatment of public employees and entities by the Tort Claims Act reflects longstanding legal principles in the State and explains in large part the apparent anomaly that public employees may be exposed to greater liability than their public employers. While some may be surprised that public employees and employers are treated differently for tort purposes, the distinctions are readily explainable given the evolution of tort law in New Jersey. Moreover, it should be emphasized that the apparent harshness of exposing employees to greater liability under certain limited circumstances is just that  apparent. In practice, the longstanding policy of indemnifying public employees shields them from ruinous tort penalties.
"[T]he burden of proof in establishing the applicability of the immunities rests with the public entity." Bligen v. Jersey City Housing Authority, 131 N.J. 124, 128, 619 A.2d 575 (1993); see also Manna v. State, 129 N.J. 341, 351, 609 A.2d 757 (1992); Birchwood Lakes Colony Club v. Medford Lakes, 90 N.J. 582, 600, 449 A.2d 472 (1982). In determining whether immunity applies, the court must "identify the culpable cause of the accident and to ask if that `identified cause or condition is one that the Legislature intended to immunize." Levin v. County of Salem, 133 N.J. 35, 43, 626 A.2d 1091 (1993) (quoting Weiss v. New Jersey Transit, 128 N.J. 376, 380, 608 A.2d 254 (1992)). The Comment to N.J.S.A. § 59:2-1 instructs courts to employ an analysis that first asks "whether an immunity applies and if not, should liability attach." Thus, this is the analysis we have employed.
The Act grants an absolute immunity to both public entities and their employees from liability for injuries caused by a failure to enforce the law. N.J.S.A. 59:2-4 concerns the immunity of public entities and provides: "A public entity is not liable for an injury caused by adopting or failing to adopt a law or by failing to enforce any law." N.J.S.A. 59:3-5 concerns the immunity of public employees and provides: "A public employee is not liable for an injury caused by his adoption of or failure to adopt any law or by his failure to enforce any law." Under these sections, public entities and their employees are not liable for their "failure to enforce safety ordinances, regulations or the law generally." See *497 Margolis and Novick, Claims Against Public Entities (1994), Comments to N.J.S.A. 59:2-4 and N.J.S.A. 59:3-5.
In this case, the trial court found that plaintiffs' claims were based upon defendants' failure to enforce N.J.A.C. 5:23-2.32(a) of the Uniform Construction Code (Code). That Code section provides:
Unsafe structures
(a) All buildings or structures that shall become unsafe, or unsanitary, or that contain deficient or blocked exitway facilities, or which constitute a fire hazard or are otherwise dangerous to human life or the public welfare, or that by reason of illegal or improper use or occupancy shall be deemed unsafe buildings or structures, shall be taken down and removed or made safe and secure. A vacant building that is unguarded or open at door or window shall be deemed a fire hazard and unsafe within the meaning of this chapter.
Based upon this finding, the trial court held that defendants were immune from civil liability for failure to enforce this provision of the Code. Although plaintiffs' expert relied upon this section in criticizing Camden's handling of its vacant buildings, this is not plaintiffs' sole allegation. It is clear that plaintiffs also claimed that Camden, in its capacity as a landowner, negligently maintained its buildings in a dangerous condition. This allegation states a claim upon which relief can be granted.
The drafters of the Act caution courts to "exercise restraint in the acceptance of novel causes of action against public entities." Comment, N.J.S.A. 59:2-1. However, a cause of action against a public entity for the dangerous conditions of its property is not novel. Cf. Bligen v. Jersey City Housing Authority, supra, 131 N.J. at 134, 619 A.2d 575. The law imposing tort liability on public entities in their capacity as landowners is well established. See id. at 134-36, 619 A.2d 575; B.W. King, Inc. v. West New York, 49 N.J. 318, 327, 230 A.2d 133 (1967); Mayer v. Housing Authority of Jersey City, 84 N.J. Super. 411, 202 A.2d 439 (App. Div. 1964), aff'd o.b., 44 N.J. 567, 210 A.2d 617 (1965); Doud v. Housing Authority of Newark, 75 N.J. Super. 340, 345, 183 A.2d 149 (App.Div. 1962). For example, in B.W. King v. West New York, supra, the Supreme Court held that the City of West New York was not immune from liability for damages caused by a fire *498 starting on property that the City had acquired through tax foreclosure. Trespassers had started the fire, which spread to and damaged adjoining landowners' property. With regard to the potential liability of a landowner in such a situation, the Supreme Court stated:
Although the common law rule was to the contrary, a land owner's liability for the spread of a fire originating on his property must ordinarily be predicated upon negligence. Menth v. Breeze Corporation, Inc., 4 N.J. 428 [73 A.2d 183] (1950); Conrad v. Gerber, 106 N.J.L. 158 [147 A. 476] (E. & A. 1929); Lefeber v. Goldin, 17 N.J. Super. 422 [86 A.2d 287] (App.Div. 1952). In Menth, supra, this Court said at 4 N.J. [at], pp. 439-440 [73 A.2d 183] in connection with a fire started by a trespasser:
"It is the settled rule that the owner of property is not liable for the spread of a fire which is accidentally started thereon by the act of a stranger or by some other cause with which he is not connected, unless he is guilty of negligence in respect to the condition of his premises or in failing to prevent the spread of the fire, after he has notice of the existence of the fire on his premises. * * * However, if an owner or occupier by reason of his negligence has kept his premises in an unsafe and dangerous condition, as by the accumulation of inflammable material thereon so as to create a fire hazard to adjoining property in the event such material becomes ignited, such negligent owner or occupier may be held answerable for the damage caused by the spread of the fire even though such fire may have been started by the act of a third person or independent agency or any unauthorized act, if such act was reasonably foreseeable as the natural and probable consequence of the negligent manner in which the premises were kept. The intervening negligent acts of strangers or intruders which might start a fire communicated to adjoining premises may constitute a danger which such owner or occupant reasonably should have contemplated and guarded against."
An owner is therefore not ordinarily liable for a fire by a trespasser. It is only where the premises are in an unsafe and dangerous condition or the owners fail to take reasonable means to prevent the spread of fire that liability for the acts of a stranger arises.
[Id., 49 N.J. at 326-27, 230 A.2d 133].
Similarly, in Mayer v. Housing Authority of Jersey City, supra, 84 N.J. Super. 411, 202 A.2d 439, we elaborated on the issue of municipal-landlord liability. There, a father filed a suit against the Housing Authority after his son had been injured by a stone thrown in a playground area of the complex. The housing-complex manager, who had known for several months that children were throwing rocks in the playground area, failed to take reasonable measures to supervise the area. We held that

*499 [t]he rule is well settled that a landlord owes to tenants and their children a duty of reasonable care as to such portions of the premises. [citations omitted]. Duty signifies conformance to a reasonable standard of legal conduct in the light of the apparent risk. [citations omitted.] Negligence arises from a breach of such duty and is relative to the time, place and circumstances. It is tested by whether the reasonably prudent person would recognize and foresee an unreasonable risk of harm to others. * * * Notwithstanding the defendant's public nature, its liability for negligence must be adjudged on the principles of law applicable to private owners of property. Goldberg v. Housing Auth. of Newark, 38 N.J. 578, 581 [186 A.2d 291] (1962).
 [84 N.J. Super. at 417-18, 202 A.2d 439 (emphasis
 added).]
Applying these principles here, we are convinced that the trial court erred in granting defendants' motion for summary judgment based upon the immunity provisions of N.J.S.A. 59:2-4 and N.J.S.A. 59:3-5. While the defendants may be immune from any liability for failure to enforce N.J.A.C. 5:23-2.32(a) of the Code, a genuine issue of material fact still existed as to whether these defendants, in their capacity as landowners, negligently maintained their buildings in a dangerous condition.
In arguing that they are immune for their failure to enforce the law, defendants rely upon cases in which the courts based their findings of immunity upon the plaintiffs' specific claims involving the public entities' role as enforcer of the laws. See Bombace v. City of Newark, 241 N.J. Super. 1, 5-6, 574 A.2d 49 (App.Div. 1990), rev'd, 125 N.J. 361, 593 A.2d 335 (1991); Burroughs v. City of Atlantic City, 234 N.J. Super. 208, 220, 560 A.2d 725 (App.Div. 1989), certif. denied, 117 N.J. 647, 569 A.2d 1345 (1989); Garry v. Payne, 224 N.J. Super. 729, 735, 541 A.2d 293 (App.Div. 1988); Cogsville v. Trenton, 159 N.J. Super. 71, 74, 386 A.2d 1362 (App. Div. 1978). These cases are factually distinguishable and do not support defendants' claim for immunity. In contrast to these cases, plaintiffs' claims not only involve the public entities' role as enforcer of the laws, but also involve its role as a landowner.
Furthermore, in cases where public entities are found immune from liability for failure to enforce the laws against private landlords, the private landlords still can be held liable. See, e.g., Bombace v. City of Newark, supra, 125 N.J. at 372, 593 A.2d 335; Garry v. Payne, supra, 224 N.J. Super. 729, 541 A.2d 293. In *500 Bombace v. City of Newark, supra, the Supreme Court dismissed claims against the City of Newark based upon its immunity for failure to enforce smoke-detector violations against a private landlord, in part, reasoning:
The objective of the absolute immunity of section 3-5, and its counterpart, section 2-4, is to protect government from liability for its failure to enforce a law. Such a failure would most often, if not invariably, occur when a person's harm arises out of a code violation or a breach of law that would be directly attributable to someone else's wrongful acts; the government's failure to act or non-action would be only an indirect contributing cause of the harm. In that context, the victim would at least have a principal wrongdoer [the landlord] from whom to seek redress.
[125 N.J. at 371-72, 593 A.2d 335 (citations omitted)].
Here, however, Camden is the landowner. Plaintiffs' claims, therefore, should not have been viewed restrictively as merely a failure of defendants to enforce the Code. Rather, plaintiffs' claims must be viewed as asserting negligence on the part of Camden and its employees in their role as a landowner.
Defendants' reliance upon Cogsville v. Trenton, supra, 159 N.J. Super. at 71, 386 A.2d 1362, is also misplaced for other reasons. The claim involved there was the failure of the City of Trenton to remove an allegedly known vicious dog located on City-owned property. We held that the immunity of N.J.S.A. 59:2-4 was applicable with regard to the claim of failure to enforce the law on its property. With regard to plaintiffs' claim against the City of Trenton in its capacity as landlord we found "no case nor has any such rule been called to our attention attaching liability to a dog-owner's landlord." Id. at 73, 386 A.2d 1362. By contrast, here plaintiffs' negligence claim against Camden in its capacity as a landowner has support. Moreover, in Cogsville we explained that the term "dangerous conditions" is restricted to physical conditions of the property, which did not exist in that case. Id. at 74, 386 A.2d 1362. Plaintiffs' claims here clearly involve dangerous conditions on and in Camden's property. Consequently, the trial court erred in granting judgment in favor of Camden on the ground that plaintiffs' claim was based merely on its failure to enforce the law.

*501 II.
The trial court also erred in granting summary judgment in favor of defendants on the ground that a dangerous condition did not exist with respect to Camden's vacant buildings and that the fires resulted from actions of third parties. Plaintiffs contend that the trial court should have viewed the case under the less restrictive liability provisions of N.J.S.A. 59:2-2, and, in any event, their claims still should have survived a summary judgment motion under N.J.S.A. 59:4-2.
N.J.S.A. 59:4-2 establishes governmental tort liability for injury caused by a dangerous condition of public property. The statute reads:
A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
b. a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.
Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.
The term "dangerous condition" is defined in N.J.S.A. 59:4-1a as follows:
"Dangerous condition" means a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used.
The term "public property" is defined in N.J.S.A. 59:4-1c as follows:
"Public property" means real or personal property owned or controlled by the public entity, but does not include easements, encroachments and other property that are located on the property of the public entity but are not owned or controlled by the public entity.
*502 In order to recover under N.J.S.A. 59:4-2, a party must prove: (1) that there was a dangerous condition on the property at the time of the injury, (2) that the dangerous condition proximately caused the injury, (3) that the dangerous condition created a foreseeable risk of the kind of injury incurred, (4) that either (a) a public employee created the dangerous condition, or (b) that a public entity had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have protected against the condition and (5) the action or inaction of the public entity with regard to its effort to protect against the condition was palpably unreasonable. Levin v. County of Salem, supra, 133 N.J. at 42, 626 A.2d 1091; Thompson v. Newark Housing Authority, 108 N.J. 525, 530, 531 A.2d 734 (1987); Kolitch v. Lindedahl, 100 N.J. 485, 492-93, 497 A.2d 183 (1985).
The most difficult issue posed by this case is whether a dangerous condition existed on or with respect to Camden's vacant buildings. Our courts have interpreted the term "dangerous condition" as defined in N.J.S.A. 59:4-1a to refer to the "physical condition of the property itself and not to activities on the property." Sharra v. City of Atlantic City, 199 N.J. Super. 535, 540, 489 A.2d 1252 (App.Div. 1985) (citing Rodriguez v. N.J. Sports & Exposition Auth., 193 N.J. Super. 39, 472 A.2d 146 (App.Div. 1983), certif. denied, 96 N.J. 291, 475 A.2d 586 (1984)); see also Levin v. County of Salem, supra, 133 N.J. at 44, 626 A.2d 1091. In Levin v. County of Salem, supra, the Court held that foreseeability of the risk of damage or injury by itself is not enough to create a dangerous condition; it also must be accompanied by a defect in the property. 133 N.J. at 49-50, 626 A.2d 1091. In so holding, the Court hypothesized:
Of course, a physical defect in the property, for example, a missing window, combined with the foreseeable neglect or misconduct of third parties, may result in the imposition of liability on the public entity because the combination renders the property unfit. Some conditions of the property itself impair the safety of its intended or foreseeable uses. See, e.g., Speaks [v. Jersey City Housing Auth.], supra, 193 N.J. Super. [405] at 412, 474 A.2d 1081 [(App.Div. 1984)] (finding that housing authority's failure to replace missing window created dangerous condition *503 in common yard frequented by children directly under window when foreseeable risk existed that someone would drop or throw object out of window).
[Id., 133 N.J. at 49, 626 A.2d 1091].
In Levin, plaintiff was injured after diving off a bridge that notoriously had been used for that purpose for a number of years. The Court rejected plaintiff's claim that the bridge exposed the public entity to liability because it created a foreseeable risk to users where the bridge was free from defect. Id. at 49-50, 626 A.2d 1091. The Court distinguished Speaks v. Jersey City Housing Auth., 193 N.J. Super. 405, 474 A.2d 1081 (App.Div.), certif. denied, 97 N.J. 655, 483 A.2d 177 (1984), on the ground that Speaks involved a window that was broken as well as a foreseeable risk of harm to children always playing in the courtyard below the window. Consequently, in Speaks, foreseeability of risk existed in combination with a defective or dangerous condition of property; in Levin, there was only foreseeability of risk. In the former situation liability of the public entity attaches, in the latter situation it does not.
This case is more analogous to Speaks than Levin. Camden clearly had knowledge that the vacant buildings were in a dangerous condition; this is evidenced by Camden's own building inspection report with regard to the building adjacent to several of the plaintiffs' properties. That report reads "STRUCTURE A HAZARD TO THE PUBLIC-DEMOLISH." Additionally, plaintiffs asserted that they notified Camden of the dangerous condition of the buildings from which the fires emanated. This known hazardous condition of the buildings combined with the foreseeable misconduct of third parties starting fires therein would be sufficient to satisfy the "dangerous condition" element of N.J.S.A. 59:4-2. See Levin v. County of Salem, supra, 133 N.J. at 49, 626 A.2d 1091.
Contrary to the trial court's conclusions, a trier of fact could reasonably find that a "dangerous condition" existed in the buildings even though the fires started therein were the acts of third parties. Merely because "independent intervening acts" created the fire does not absolve Camden from liability as a landowner. It is well-established law that a landowner may be held liable for *504 damages "caused by the spread of the fire even though such fire may have been started by the act of a third person or independent agency or any unauthorized act, if such act was reasonably foreseeable as the natural and probable consequence of the negligent manner in which the premises were kept." Menth v. Breeze Corporation, Inc., supra, 4 N.J. at 440, 73 A.2d 183; see also B.W. King, Inc. v. West New York, supra, 49 N.J. at 327, 230 A.2d 133. Thus, based upon the condition of the city-owned buildings and the attendant foreseeable risk of harm, the trial court erred in finding that the properties were not in a dangerous condition within the meaning of N.J.S.A. 59:4-2 as a matter of law.
With regard to the remaining four elements required to be established under N.J.S.A. 59:4-2 for liability to attach, defendants have not excluded all reasonable doubt as to the existence of genuine issues of material fact concerning these elements. For example, with respect to the second and third elements, plaintiffs have presented sufficient evidence to establish that the condition of the vacant city-owned buildings both caused the fire and created a foreseeable risk of fire. As to the fourth element, sufficient evidence has been presented to show that Camden had constructive, if not actual, notice of the dangerous condition in those buildings. Finally, as to the fifth element, there is sufficient evidence in the record to raise a factual issue as to whether Camden's action or inaction in respect of its effort to protect against the dangerous condition of its properties was palpably unreasonable. Cf. Wooley v. Bd. of Chosen Freeholders, 218 N.J. Super. 56, 62, 526 A.2d 1116 (App.Div. 1987); Shuttleworth v. Conti Constr. Co., Inc., 193 N.J. Super. 469, 474, 475 A.2d 48 (App.Div. 1984).
While Camden's potential liability for a dangerous condition on its public property must be measured against the palpably unreasonable standard of N.J.S.A. 59:4-2, the potential liability of Camden's employees, DiMedio and Richardson, may be measured by or subject to a different standard. See Chatman v. Hall, supra, 128 N.J. at 412-15, 608 A.2d 263. In Chatman v. Hall, *505 supra, the Supreme Court held that the analysis for determining public-employee liability under the Act differed from that of determining public entity liability. As concerns dangerous conditions on public property, "when public employees are involved in activities that require discretionary decisions regarding the allocation of resources, they are liable only when their actions have been palpably unreasonable." Id. at 414, 608 A.2d 263; see also N.J.S.A. 59:3-2(d) (providing qualified immunity for discretionary decision-making). "On the other hand, when qualified immunity for discretionary decision-making does not apply, public employees are liable in tort under common-law principles of ordinary negligence." Id. at 415, 608 A.2d 263.
Consequently, the standard of liability to which DiMedio and Richardson are subject is to be determined by whether their activities required discretionary decisions regarding the allocation of resources. If, for example, the decision to allow the city-owned buildings to remain in a dilapidated and hazardous condition was the result of a policy decision because of limited resources, "then the standard of liability would be whether the decision was palpably unreasonable." Chatman v. Hall, supra, 128 N.J. at 417, 608 A.2d 263. If, on the other hand, they merely failed to follow the mandates of a higher-up decision to demolish or adequately secure the buildings in a reasonable manner, "the standard of liability would be negligence." Ibid. The record is not sufficiently developed to make that determination on this appeal.
Furthermore, the trial court initially denied summary judgment motions of DiMedio and Richardson. In the course of doing so, the trial court found that the qualified immunity for discretionary decision-making activity provided by N.J.S.A. 59:3-2(d) did not apply to DiMedio, stating:
Therefore, this exemption does not apply to Mr. DiMedio and, even if it did, he would have to establish affirmatively for the purposes of this motion that any determination he made was palpably unreasonable. The record is not clear as to what, if any, determinations Mr. DiMedio made relative to Royden Street and Garfield Avenue other than his office's singular document mentioned ... above.
*506 As to Richardson, the trial court held that the evidence was insufficient to determine whether he was entitled to a qualified immunity under N.J.S.A. 59:3-2(d). Thus, at the very least, there were genuine issues of material fact on the immunity issues that preclude the granting of summary judgment in favor of defendants.
Although summary judgment should not have been granted in this case, we deem it appropriate to emphasize that plaintiffs still bear the heavy burden of establishing defendants' liability under the stringent provisions of the Tort Claims Act. Bligen v. Jersey City Housing Authority, supra, 131 N.J. at 136, 619 A.2d 575. Plaintiffs must prove that Camden's actions or inactions were "palpably unreasonable" under N.J.S.A. 59:4-2. With regard to DiMedio and Richardson, if it is determined that they are entitled to the qualified immunity under N.J.S.A. 59:3-2(d), plaintiffs also must satisfy the more difficult "palpably unreasonable" burden of proof with respect to their actions. If, however, the qualified immunity for discretionary decision making does not apply, plaintiffs only need satisfy the standards of ordinary negligence. In either situation, Camden may, of course, be potentially liable for the actions of DiMedio and Richardson. See N.J.S.A. 59:2-2.

III.
Finally, we are satisfied from our study of the record and the arguments presented that plaintiffs' damages claims based on alleged violations of due process and fundamental fairness and their claims of the unconstitutional taking of their property without just compensation are clearly without merit. R. 2:11-3(e)(1)(E).

IV.
Accordingly, the summary judgment is affirmed as to the Second, Third and Fourth Counts and reversed as to the First and Fifth Counts. The matter is remanded to the trial court for *507 further proceedings consistent with the views expressed in this opinion.