911 A.2d 82 (2006)
389 N.J. Super. 60
David FOSTER, Plaintiff-Appellant/Cross-Respondent,
v.
NEWARK HOUSING AUTHORITY, Defendant-Respondent/Cross-Appellant, and
Newark Housing Authority Housing Police and Estate of Adrian Howell, Defendants.[1]
Superior Court of New Jersey, Appellate Division.
Argued October 31, 2006.
Decided November 21, 2006.
*83 Edward H. Lee, Springfield, argued the cause for appellant/cross-respondent (Pitman, Mindas, Grossman and Lee, attorneys; Mr. Lee, on the brief).
James G. Serritella, argued the cause for respondent/cross-appellant (Buttafucco, Arce & Price, attorneys, South Plainfield; Mr. Serritella, on the brief).
Before Judges COBURN, AXELRAD and R.B. COLEMAN.
The opinion of the court was delivered by
COBURN, P.J.A.D.
In this personal injury negligence action against a public entity, plaintiff David Foster appeals from summary judgment. *84 Defendant Newark Housing Authority cross-appeals, contending that if plaintiff is correct on his appeal, there are additional grounds on which it lost below that justify judgment in its favor. We will consider the appeal first.
In the course of his duties, Newark Police Detective David Foster was shot three times in an apartment located in a ten-building, Newark Housing Authority residential complex. He filed suit against the Housing Authority, alleging that its negligence permitted his attacker, who was not a tenant, to gain entrance into the building and then into the apartment where the shooting occurred.
Four days before trial, the Housing Authority filed two notices of motion: one sought a ruling that N.J.S.A. 59:4-2, the section of the New Jersey Tort Claims Act ("TCA"), N.J.S.A. 59:1-1 to 59:12-3, concerned with dangerous conditions of public property, governed the case; and the other sought an order barring the testimony of plaintiff's expert. The only support for the motions was a certification of the Housing Authority's counsel summarizing the expert's report. During argument of the motions, the Housing Authority asked for summary judgment. Although this request was obviously submitted in violation of the applicable court rule, R. 4:46-1, the judge ruled on it.
Detective Foster argued that N.J.S.A. 59:4-2 was inapplicable because of the Housing Authority's status as a landlord, but the judge agreed with the Housing Authority. The judge went on to accept as a fact that the outer door to the building had a lock that the Housing Authority had installed but had not made operational and that the Housing Authority had, in other ways, negligently failed to provide adequate security. But, applying N.J.S.A. 59:4-2, he found as a matter of law that the Housing Authority's conduct was not palpably unreasonable because Detective Foster was a police officer conducting a criminal investigation with knowledge that the trespasser might be on the property. Although he did not cite the common law fireman's rule, it appears that he may have been applying his understanding of it to this case.
We conclude that N.J.S.A. 59:4-2 governs here notwithstanding the Housing Authority's status as a landlord. We also conclude that L. 1993, c. 366 §§ 1 and 2, codified as N.J.S.A. 2A:62A-21 to22, [the "Firefighters' Act"], which abrogated the fireman's rule, does not relieve the covered public employees, including police officers, from having to satisfy the requirements of the TCA. But since the record contains sufficient evidence to support a finding of liability under N.J.S.A. 59:4-2, we reverse and remand for trial.
On appeal the parties submitted extensive factual materials previously placed before another judge earlier in the case. Of course, the judge who granted summary judgment made no findings with respect to those materials, and therefore the parties are not entitled to our consideration of them on the appeal. However, the facts properly before us on the appeal, which include factual representations made to the trial judge by Detective Foster's attorney, without objection from the Housing Authority, would support these findings: criminal activity by non-tenants was an ongoing problem at the Housing Authority's complex; the front doors of all the buildings had locks that the Housing Authority installed to improve security but had not made operational; on November 24, 1998, Detective Foster entered the building with a female victim to accompany her to her apartment to obtain evidence against the victim's ex-boyfriend; the victim had to use her key to enter her apartment; her ex-boyfriend had entered her building through its unlocked door and had somehow also entered her apartment; *85 Detective Foster was with the victim because her ex-boyfriend might be in the apartment; and when she and Detective Foster entered the apartment, her ex-boyfriend repeatedly shot Detective Foster without provocation, causing him severe injuries that ultimately led to his early retirement.
We turn first to Detective Foster's claim that when a public entity is a landlord its responsibility to tenants and visitors is governed by the common law applicable to commercial landlords and not by N.J.S.A. 59:4-2.[2] He argues that his position is supported by the following cases: Goldberg v. Housing Authority of Newark, 38 N.J. 578, 186 A.2d 291 (1962); Braitman v. Overlook Terrace Corp., 68 N.J. 368, 346 A.2d 76 (1975); Trentacost v. Brussel, 82 N.J. 214, 412 A.2d 436 (1980); McGlynn v. Parking Authority of Newark, 86 N.J. 551, 432 A.2d 99 (1981); Bligen v. Jersey City Housing Authority, 131 N.J. 124, 619 A.2d 575 (1993); and Lieberman v. Port Authority, 132 N.J. 76, 622 A.2d 1295 (1993).
Since Goldberg was decided before the TCA was enacted in 1972, L. 1972, c. 45, § 1, it provides no support for Detective Foster's argument. Except for Bligen, the other cited cases are inapposite since they do not involve entities covered by the TCA. And Bligen supports the Housing Authority since it holds that a plaintiff alleging negligence based on a dangerous condition of public property "bears the heavy burden of establishing defendant's liability under the stringent provisions of the Tort Claims Act," and, more specifically, "under N.J.S.A. 59:4-2." Bligen, supra, 131 N.J. at 136-37, 619 A.2d 575. Furthermore, the Legislature declared in the TCA that "public entities shall only be liable for their negligence within the limitations of this act. . . ." N.J.S.A. 59:1-2.
Next we consider the relationship between the TCA and the Firefighters' Act, which provides as follows:
In addition to any other right of action or recovery otherwise available under law, whenever any law enforcement officer, firefighter, or member of a duly incorporated first aid, emergency, ambulance or rescue squad association suffers any injury, disease or death while in the lawful discharge of his official duties and that injury, disease or death is directly or indirectly the result of the neglect, willful omission, or willful or culpable conduct of any person or entity, other than that law enforcement officer, firefighter or first aid, emergency, ambulance or rescue squad member's employer or co-employee, the law enforcement officer, firefighter, or first aid, emergency, ambulance or rescue squad member suffering that injury or disease, or, in the case of death, a representative of that law enforcement officer, firefighter or first aid, emergency, ambulance or rescue squad member's estate, may seek *86 recovery and damages from the person or entity whose neglect, willful omission, or willful or culpable conduct resulted in that injury, disease or death.
[N.J.S.A. 2A:62A-21.]
The rights, remedies and limitations accorded by the provisions of this act are hereby declared to be in addition to and cumulative of the rights, remedies and limitations accorded under law and nothing herein shall be construed to deny, abrogate or impair any such statutory right, remedy or prohibition.

[N.J.S.A. 2A:62A-22 (emphasis added).]
When the judge granted summary judgment in this case, there were four decisions interpreting the Firefighters' Act. In Boyer v. Anchor Disposal and Sunshiner Maintenance, 135 N.J. 86, 87-88, 638 A.2d 135 (1994), the Court observed in dictum that "[b]ecause the Legislature has, in effect, abolished the firefighters' rule in New Jersey, L. 1993, c. 366 [N.J.S.A. 2A:62A-21 to -22], this case is probably the last in which this Court will consider an application of the rule." That view was echoed in dictum by a panel of this court in James v. Arms Technology, Inc., 359 N.J.Super. 291, 326, 820 A.2d 27 (App.Div.2003). But another panel of this court reached a contrary conclusion, holding that the statute did not overturn the common law rule that a citizen could not be sued by a firefighter or police officer for negligent acts that bring either to a scene and cause personal injury. Kelly v. Ely, 336 N.J.Super. 354, 359-61, 764 A.2d 1031 (App.Div.), certif. denied, 167 N.J. 635, 772 A.2d 937 (2001). Then, the Third Circuit added its voice, predicting that our State Supreme Court would not follow Kelly because the language of the statute was clear. Roma v. United States, 344 F.3d 352, 359-62 (3d Cir.2003).
In this case, the police officer was injured at an unlawful incident that arguably resulted, in part, from the Housing Authority's negligent conduct in failing to provide a working lock for the building's outside door. Since the trial judge was obliged to follow Kelly, we do not fault him for dismissing Detective Foster's case to the extent that he may have done so under the fireman's rule as interpreted by Kelly. Under Kelly, the Housing Authority would have been protected by a common law immunity, and the TCA has been interpreted as providing "that common-law immunities survive the enactment of the [TCA] unless specifically overruled." Bligen, supra, 131 N.J. at 131, 619 A.2d 575. But about six months after the judge ruled, another panel of the court agreed with the Third Circuit and rejected Kelly. Ruiz v. Mero, 385 N.J.Super. 382, 897 A.2d 407 (App.Div.), certif. granted, 188 N.J. 352, 907 A.2d 1012 (2006). Since we are satisfied that Ruiz was correctly decided and that the common law immunity no longer applies, the Firefighters' Act does not bar the instant action.
Next we consider whether the Firefighters' Act is subject to the TCA, or provides an entirely separate cause of action. Read literally, the beginning language of the first section of the Firefighters' Act, which states that "[i]n addition to any other right of action or recovery otherwise available under law," the covered officer may sue, N.J.S.A. 2A:62A-21, suggests an independent cause of action outside the TCA. But the second section of that statute shows that is not the case by providing that "limitations [otherwise] accorded under law" shall continue to apply. N.J.S.A. 2A:62A-22. The TCA is just such a limitation.
When the words in a statute are clear, and their literal application is compatible with the overall legislative design, the interpretive process is satisfied by enforcement of the plain meaning of the words. O'Connell v. State, 171 N.J. 484, 488, 795 A.2d 857 (2002). In Ruiz, supra, *87 385 N.J.Super. at 388, 897 A.2d 407, we concluded that the purpose of the Firefighters' Act was to abrogate the fireman's rule entirely, thereby removing the common law impediment to suit. That goal is fully served without reading the Firefighters' Act as exempting the covered officers from the requirements of the TCA. Our construction also furthers the specific legislative policy of the TCA "that public entities shall only be liable for their negligence within the limitations of" the TCA. N.J.S.A. 59:1-2. Therefore, we hold that an officer whose negligence suit is permitted by the Firefighters' Act must still comply with all the applicable provisions of the TCA.
Next, we consider whether Detective Foster is entitled on this record to a trial pursuant to N.J.S.A. 59:4-2. Of course, a dangerous condition of property is not shown by evidence that only indicates foreseeable criminal activities of a third party that injure plaintiff. Setrin v. Glassboro State College, 136 N.J.Super. 329, 333, 346 A.2d 102 (App.Div.1975). But "a dangerous condition of property may be found to exist when an unreasonable risk of harm is created by the combination of a defect in the property and the acts of third parties." Roe v. N.J. Transit Rail Operations, 317 N.J.Super. 72, 74-75, 721 A.2d 302 (App.Div.1998), certif. denied, 160 N.J. 89, 733 A.2d 494 (1999); see also Saldana v. DiMedio, 275 N.J.Super. 488, 503-04, 646 A.2d 522 (App.Div.1994); Rodriguez v. N.J. Sports & Expo. Auth., 193 N.J.Super. 39, 44, 472 A.2d 146 (App.Div. 1983), certif. denied, 96 N.J. 291, 475 A.2d 586 (1984). Unquestionably, a jury could find that the failure to provide a lock for the front entrance of a building was a dangerous condition of the property. Trentacost, supra, 82 N.J. at 220-28, 412 A.2d 436. And the jury could also find that Detective Foster's injuries were proximately caused by the dangerous condition; that in the context of this case this was a reasonably foreseeable risk; that the dangerous condition was the result of the public entity's negligence; and that the public entity had actual notice of the dangerous condition for a sufficient period of time to have corrected it.
The only remaining applicable requirement of the TCA is that it be shown that the failure to activate the outer door lock was "palpably unreasonable," meaning "behavior that is patently unacceptable under any given circumstance." Muhammad v. N.J. Transit, 176 N.J. 185, 195, 821 A.2d 1148 (2003) (quoting Kolitch v. Lindedahl, 100 N.J. 485, 493, 497 A.2d 183 (1985)). Generally, this issue is a fact question for the jury. Vincitore v. N.J. Sports & Expo. Auth., 169 N.J. 119, 130, 777 A.2d 9 (2001). In Roe v. N.J. Transit Rail Operations, supra, 317 N.J.Super. at 82, 721 A.2d 302, we held that the conduct of the public entity defendant could be found to have been palpably unreasonable when it bolted open a gate, thereby inviting the public to enter a known dangerous area where the plaintiff was brutally raped. In Saldana, supra, 275 N.J.Super. at 488, 646 A.2d 522, we held that a jury should determine whether the City of Camden was palpably unreasonable because it failed to secure buildings that it owned but had abandoned. Third parties had started fires in one of the buildings, thereby damaging plaintiffs' adjacent buildings. Those cases are analogous to the instant case, and we perceive no basis on the present record for saying that the Housing Authority was not palpably unreasonable as a matter of law.
On its cross-appeal, the Housing Authority argues first that an earlier decision by another trial judge erroneously denied its motion for summary judgment based on N.J.S.A. 59:5-4, which provides that a public entity is not liable for the failure to provide police protection services. Unlike N.J.S.A. 59:4-2, this section does not provide *88 a cause of action; it simply provides an immunity. Since Detective Foster is not basing his claim on a failure to provide police protection services, and since he has a viable cause of action based on the dangerous condition of the Housing Authority's property, we perceive no basis for saying the ruling was in error. We note, however, that this immunity may affect the admissibility of some aspects of Detective Foster's expert's testimony. The Housing Authority's second argument is that both judges erred by refusing to hold that the expert report was a net opinion. After carefully considering the record and briefs, we are satisfied that this argument is without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).
Affirmed in part; reversed in part; remanded for trial.
NOTES
[1] The complaint was dismissed with prejudice as to these defendants.
[2] A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:

a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
b. a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.
Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.