171 N.J. Super. 1 (1979)
407 A.2d 1237
EFRAIN SUAREZ, ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF IDANIS RIVERA SUAREZ, A/K/A IDANIS RIVERA SUAREZ, DECEASED, PLAINTIFF-RESPONDENT AND CROSS-APPELLANT,
v.
TROOPER PAUL DOSKY, TROOPER ROBERT WEISERT, JOHN DOE, NEW JERSEY STATE POLICE AND THE STATE OF NEW JERSEY, INDIVIDUALLY AND COLLECTIVELY, DEFENDANTS-APPELLANTS AND CROSS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 2, 1979.
Decided October 18, 1979.
*4 Before Judges ALLCORN, MORGAN and HORN.
Mr. George W. Fisher, Deputy Attorney General, argued the cause for appellants (Mr. John J. Degnan, Attorney General of New Jersey, attorney; Mr. Stephen Skillman, Assistant Attorney *5 General, of counsel; Mr. Thomas D. Monte, Jr., Deputy Attorney General, and Mr. Fisher, on the brief).
Mr. Gregory J. Aprile argued the cause for respondent (Mr. Philip M. Saginario, attorney and on the brief).
The opinion of the court was delivered by MORGAN, J.A.D.
Liability imposed by jury verdict upon two state police officers for the negligent performance of their duties in connection with a minor one-car accident requires us to consider the scope of a police officer's liability, or immunity, for negligence in the performance of his job under the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq. Also to be considered are more traditional issues such as proximate cause and several challenged trial court rulings on requests to charge, motions to amend and allegedly improper remarks in summation.
Because we are required to accept as true the evidence supporting the position of the party favored by the jury verdict, the facts pertinent to the issues raised on this appeal can be viewed as largely undisputed despite the substantial areas of factual dispute encountered during the trial of this case. The jury must have found that at about 10:30 p.m. on August 3, 1974 a vehicle occupied by eight persons, including plaintiff's decedent, Idanis Rivera, went out of control on Interstate Route 80 and came to rest on the shoulder and grass berm adjacent to the eastbound side of the highway, no more than 500 feet from an exit ramp.[1] No one was injured in what all considered to be a minor accident which nonetheless disabled the car. Shortly thereafter defendants Paul Dosky and Robert Weisert, New Jersey State Troopers, arrived at the scene in their patrol car, issued a summons to the driver for operating an unsafe vehicle and radioed for a truck, which subsequently removed the damaged *6 automobile from the highway. Although requested to, defendant troopers declined to escort the now stranded occupants (including two young children, two and three years of age) from Route 80 and refused to radio for a taxicab. Instead, the group was advised to walk to the nearest exit and off the highway.
It was the tragic events which occurred during their passage along Route 80 which generated the present lawsuit. Route 80 in this area is an eight-lane road, the four eastbound lanes of which are separated from the four westbound lanes by a concrete wall, a "California island." Decedent's group had been travelling easterly to Kennedy Airport before the accident. Adjacent to the right lane of the eastbound side is a ten-foot paved shoulder ending in a curb, beyond which is a grassy berm. The group was left by the officers on the shoulder or the berm.
During their progress toward the exit (they were carrying some luggage) one of the two young children wandered out into the right travelled lane of Route 80 and was almost immediately struck and killed by an unknown vehicle. The driver was joined to this suit as John Doe. In response to this tragic event, decedent ran out into Route 80 in an attempt either to rescue the child or recover her body. She, too, was killed by another driver, this one in the westbound lane, John Wachuk.
Suit was brought for the wrongful death of Idanis Rivera. The named defendants were the two officers who left them on Route 80 after the minor accident, the State of New Jersey who employed the two officers, John Wachuk, whose car killed Rivera, and John Doe, the unknown driver whose car killed the young child. Plaintiff's theory of action against the officers and the State was that they owed and breached a duty of aiding the stranded passengers in exiting Route 80. There was one mistrial caused by the settlement of John Wachuk.[2] After a *7 four-day trial, with damages stipulated,[3] the jury returned a verdict in plaintiff's favor.
The State appeals, contending first that N.J.S.A. 59:5-4 affords it and defendant troopers in its employ complete immunity from tort liability in the given circumstances of this case. The critical provision upon which the State relies, N.J.S.A. 59:5-4, reads as follows:
Neither a public entity nor a public employee is liable for failure to provide police protection service or, if police protection service is provided, for failure to provide sufficient police protection service.
Although no comment descriptive of the Legislature's intent accompanies this provision, the State interprets it as affording police officers and their employing public entities full and complete immunity from all tort liability arising out of any acts or omissions of the police in the performance of their official duties. The State views this provision as legislative recognition of the principle that "government should not have the duty to do all that might be done...." According to this interpretation of section 4, "the police protection service immunity is, and must be, broad and pervasive if it is to have any effect." If this is indeed the correct interpretation, then a dramatically new change in the law has been achieved with very little awareness by anyone. See, e.g., Bergen v. Koppenal, 52 N.J. 478 (1968); McAndrew v. Mularchuk, 33 N.J. 172, 193-196 (1960); Gilday v. Hauchwit, 48 N.J. 557 (1967) adopting dissenting opinion in 91 N.J. Super. 233, 249-251 (App.Div. 1966). The trial judge's rejection of this interpretation at the end of plaintiff's case when defendants moved for an involuntary dismissal, and again after verdict, provides one of the grounds of the appeal.
We agree with the trial court rejection of the immunity defense albeit for different reasons. First, nothing in the *8 language of N.J.S.A. 59:5-4 suggests the major change in prior law which would be wrought were that section to receive the interpretation the State attributes to it. Prior to adoption of the Tort Claims Act, police officers were routinely regarded as amenable to liability for tortious inadequacies in the performance of their duties. See Gilday v. Hachwit, supra; McAndrew v. Mularchuk, supra; Logan v. N. Brunswick Tp., 129 N.J. Super. 105, 110 (App.Div. 1974). See also, N.J.S.A. 59:3-1(a) and the Comment thereto. Had the Legislature intended N.J.S.A. 59:5-4 to represent such a sharp break with prior law, it surely would have used words appropriate to the occasion.
Second, the "broad and pervasive" immunity which the State sees in this provision would make the immediately following provision, N.J.S.A. 59:5-5, entirely superfluous. That section provides the police with immunity for the failure to make an arrest or prevent an escape. If, however, section 4 grants the police a broad and pervasive immunity, what possible need would there be for a specific immunity for failure to arrest. Courts should not interpret enactments in such a way as to render any part of them superfluous or unnecessary. Peper v. Princeton Univ. Bd. of Trustees, 77 N.J. 55, 68 (1978).
Third, the verbal pattern of N.J.S.A. 59:5-4 so strongly parallels that used in N.J.S.A. 5:5-1 that we feel justified in reading the legislative purposes as revealed in the Comment for the latter as similar to the purpose in enacting the former.
N.J.S.A. 59:5-1 reads:
Neither a public entity nor a public employee is liable for failure to provide a prison, jail or penal or correctional facility, or if such facility is provided, for failure to provide sufficient equipment, personnel or facilities in a prison or other correction facility.
The Comment following clearly explains that this section recognizes "the judicially accepted principle that the allocation of equipment and personnel by public entities' involves the type of *9 governmental policy determination which must remain free from the threat of tort liability.'" Hence, what the Legislature is seeking to protect in N.J.S.A. 59:5-1 is the Government's essential right and power to allocate its resources in accordance with its conception of how the public interest will be best served, an exercise of political power which should be insulated from interference by judge or jury in a tort action. We regard the same governmental imperatives as supporting the adoption of N.J.S.A. 59:5-4, the provision we are concerned with in this appeal.
Confirmation of this interpretation of N.J.S.A. 59:5-4 comes in the form of a Comment by the California Law Revision Commission to their section 845 of the Government Code. This provision is couched in language identical to N.J.S.A. 59:5-4 and which obviously provided its source. The Comment reads as follows:
This section grants a general immunity for failure to provide police protection or for failure to provide enough police protection. Whether police protection should be provided at all, and the extent to which it should be provided, are political decisions which are committed to the policy-making officials of government. To permit review of these decisions by judges and juries would remove the ultimate decision-making authority from those politically responsible for making the decisions.
Although N.J.S.A. 59:5-4 has no explanatory comment, we feel confident that the foregoing explanation of the identically phrased provision applies as well to ours.
We conclude, therefore, that N.J.S.A. 59:5-4, precludes suits against municipalities and their responsible officers based upon contentions that damage occurred from the absence of a police force or from the presence of an inadequate one. How many officers a town should employ, how each should be equipped and whether a town should have any police at all are political decisions which should not be made the subject of any tort duty.
N.J.S.A. 59:5-4, therefore, has no application to this case. Although a police officer may not be liable for failing to respond *10 (if, for example, he was performing some other official duty), if he does respond he will be subject to liability for negligence in the performance of his ministerial duties. N.J.S.A. 59:5-4 does not insulate police officers from unfortunate results of their negligently executed ministerial duties. NeCasek v. Los Angeles, 233 Cal. App.2d 131, 134, 43 Cal. Rptr. 294, 297 (D.Ct.App. 1965).
With respect to liability, defendants contend that their failure to escort plaintiff's decedent and the other stranded occupants of the damaged car from Route 80 cannot, as a matter of law, be viewed as a proximate cause of what occurred thereafter and that, accordingly, the trial judge erred in denying defendants' motions at the end of plaintiff's case and after verdict. Although a jury would have been privileged to take that view by returning a verdict favoring defendants, we cannot agree that as a matter of law, proximate cause could not have been found. Clearly, police officers, whose duties embrace protection of the public's safety on the highways, and who are expert or are supposed to be in that endeavor, could and should have foreseen danger to that group of adults and children stranded on Route 80 during the night hours. Sembler v. Scott, 130 N.J.L. 184 (E. & A. 1943); Greco v. Schmidt, 101 N.J.L. 554 (E. & A. 1925); 7 Am.Jur.2d, Automobiles and Highway Traffic, § 441. That the exact manner in which such danger would occur could not be foreseen is, in our view, legally insignificant. See Mann v. State, 70 Cal. App.3d 773, 139 Cal. Rptr. 82 (D.Ct. App. 1977).
We find none of the challenged trial rulings of sufficient merit to warrant extended discussion. Defendants' motion, made after one mistrial and prior to the start of the second trial, for an order permitting joinder of a "John Doe" defendant (the unknown driver who struck the young girl), was addressed in the first instance to the sound discretion of the trial judge. Clearly, his action in denying the motion cannot be viewed as an abuse thereof.
*11 As to the trial judge's rejection of the proffered request to charge concerning the lawfulness of pedestrian "access" to Route 80, we think the charge, as drafted, was properly rejected. Plaintiff's complaint was not that the officers acted in violation of law, and the jury was not so charged, but simply that they negligently left plaintiff's decedent and her party in a position of particular hazard. Had it been given, the result would not have been different.
To the extent that remarks of plaintiff's counsel in summation were intended or could have been interpreted as implying that the police officers acted as they did only because they were dealing with a family of Puerto Ricans, nothing in the evidence supported such assertions and they should not have been made. The remark, however, was a brief one, couched in the form of a rhetorical question, and we have concluded that it could not have affected the result.
Plaintiff's cross-appeal, concerning the trial judge's denial of a motion to amend answers to interrogatories on damages, is without merit. Damages were stipulated during trial. No suggestion was made at the time that the stipulation was being entered into under the duress engendered when the assignment judge refused plaintiff's request to amend interrogatories to add the name of an expert. In our view, the record is clear that the stipulation was just that, an agreement, freely made, voluntarily entered into which finally disposed of an issue in the case by way of that agreement.
Affirmed.
NOTES
[1] The site of the accident in relation to the nearest exit ramp was subject to sharp testimonial dispute. One witness placed the accident at the exit ramp. The longest distance, the one we adopt for purposes of this appeal, was approximately 500 feet.
[2] John Wachuk settled for $15,000.
[3] Damages in the second trial were stipulated at $75,000.