**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5751-17T2

ESTATE OF HIRAM A. GONZALEZ,
by IRAIDELIZ GONZALEZ,
Administrator Ad Prosequendum,

     Plaintiff-Appellant,

v.

THE CITY OF JERSEY CITY,
THE JERSEY CITY POLICE
DEPARTMENT, POLICE OFFICER
LEON TUCKER, JR., and POLICE
OFFICER SAAD HASHMI,

     Defendants-Respondents,

and

EMAN S. AHMED and
ELHAM M. MANSOUR,

     Defendants.

_____

Argued February 4, 2020 – Decided April 17, 2020

Before Judges Yannotti, Hoffman and Currier.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-2857-16.

Lawrence D. Minasian argued the cause for appellant (Greenberg Minasian, LLC, attorneys; William Seth Greenberg and Lawrence D. Minasian, on the briefs).

Philip Samuel Adelman, Assistant Corporation Counsel, argued the cause for respondents (Peter J. Baker, Corporation Counsel, attorney; Philip Samuel Adelman, on the brief).

PER CURIAM

In this personal injury action, we consider the conduct of defendant police officers regarding decedent Hiram Gonzalez under the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3. The trial court concluded the police were immune from liability to Gonzalez because their actions, based upon discretionary decisions, were performed in good faith and therefore protected under N.J.S.A. 59:3-3.

The trial court misapprehended the law in its grant of summary judgment to defendants. Here, because the officers were called to the scene of a motor vehicle accident, the officers' duty was ministerial in nature – they had a ministerial duty to render assistance to Gonzalez. A public employee is not immunized under the TCA if he or she was negligent in carrying out a ministerial duty. The record reflects multiple disputed issues of material fact regarding the

2

manner in which the officers executed their duty, precluding the entry of summary judgment. We reverse.

On August 3, 2014, at 2:26 a.m., defendants, Jersey City Police Officers Leon Tucker, Jr. and Saad Hashmi (defendants or officers) were dispatched to a motor vehicle accident on the Lincoln Highway Bridge in Jersey City. The bridge, connecting Newark and Jersey City, has three lanes of traffic in each direction separated by a concrete barrier. In their respective depositions, the officers differed in their recollection of the scene. Hashmi recalled Gonzalez's pickup truck being stopped in the left shoulder and left lane, perpendicular to the lanes of travel. Tucker thought the vehicle was facing oncoming traffic with its tires against the curb.

As the officers approached the car, Hashmi said he observed Gonzalez sitting in the driver's seat talking on his cell phone. Tucker said Gonzalez was out of the car.

Gonzalez told Tucker he was on his way to the Holland Tunnel when his truck spun out of control and he could not get it to reverse. The officers were able to push the truck to face the proper direction of travel by shifting it into neutral and steering it. But because the vehicle would not otherwise move, they requested a tow truck.

3

When the tow truck arrived, Tucker asked the driver if he would give Gonzalez a ride, as it was common for drivers to do.[1] Without giving any reason, the tow truck driver said no. Tucker then offered to drive Gonzalez to a nearby Shell station.[2] Gonzalez refused, stating "I'm not riding with no Jersey City cops."

Instead, Gonzalez said he was going to wait for his "brother," David Martinez, a Newark police officer. Neither officer recalled speaking to Martinez that night. Tucker did recall telling Gonzalez that the area behind the guardrail on the bridge was not a safe place to wait.

Hashmi stated the officers waited fifteen to twenty minutes for Martinez to arrive. After that point, he said Tucker reached out to dispatch to ask if they should stay with Gonzalez or leave. Both officers testified that when Tucker asked the dispatcher whether it was alright to stay with Gonzalez until Martinez arrived, he was told to "resume [his] patrol."

---

[1] Hashmi's recollection was that Gonzalez first asked the driver for a ride. When the driver said no, Tucker then asked the driver several times to take Gonzalez with him to the tow yard.

[2] The Shell station was located at the intersection of Route 440 and Communipaw Avenue, approximately a half mile east of where the officers left Gonzalez.

4

However, in the transcription of the 3:24 a.m. call made to dispatch, Tucker states: "We've got the, uh, the vehicle, the uh, driver is gonna wait for his brother in the same location where he was.  He refused to get into the car with us to head to the shell station."  Dispatch replies: "ok."

When the officers left, Gonzalez was standing on a dirt path behind a guardrail off the right side of the bridge.  The officers felt that location was safe.  During their time spent with Gonzalez, neither officer detected any signs that he was under the influence of alcohol or illegal substances.[3]

Both officers denied seeing any damage to Gonzalez's truck.  However, photographs show damage to the left front and rear bumpers.

David Martinez was also deposed.  He stated he was not related to Gonzalez but knew his sister.  He recalled seeing Gonzalez approximately four times.  Each time they met, they consumed alcohol and Martinez stated Gonzalez was drunk on each occasion.  He described Gonzalez as "belligerent" with an "irate attitude," "cursing at people" and "angry" when he is drunk.  Gonzalez had also told him he did not like police officers.

---

[3]  The photographs taken after the accident show a large half-empty bottle of cognac in the Gonzalez pickup.  The officers were not questioned about this photograph or whether they saw the bottle in the truck when they moved it.

At approximately 3 a.m. on August 3, 2014, Martinez recalled getting a phone call from Gonzalez's sister, telling him Gonzalez was drunk, he had been pulled over and needed a ride. She asked Martinez if Gonzalez could call him. Martinez agreed.

Immediately thereafter, Martinez received a call from Gonzalez. Martinez said Gonzalez was angry and yelling and told him "Listen, I got f***ing pulled over. These f*** cops are messing with me. . . . And I think they're going to arrest me. . . . I didn't do nothing wrong." Gonzalez also said he had been drinking.

According to Martinez, neither Gonzalez nor the officer told Martinez why Gonzalez had been pulled over; Martinez did not ask. Gonzalez told him he was on the Pulaski Skyway and the tow truck driver would not give him a ride. Martinez said he would come pick him up.

Martinez asked Gonzalez to hand the phone to one of the officers. Martinez did not know who he spoke to, but he did recall telling the officer that he was a Newark police officer and asking if Gonzalez was under arrest. The officer told Martinez that Gonzalez was not under arrest, but he needed a ride home. He also informed Martinez that they had offered Gonzalez a ride which

6

he had refused.  While Martinez was talking to the officer, he could hear Gonzalez yelling that he was not going to ride with "Jersey City cops."

According to Martinez, the officer told him "Listen, he's been drinking a little bit. . . . He can't drive.  We got to tow his vehicle.  It'll be nice if somebody could come pick him up."  Martinez said he would pick Gonzalez up in about ten minutes.  Martinez assumed the officers would wait with Gonzalez for him to arrive although he did not say that to the officer.  Before hanging up, Martinez spoke with Gonzalez again and told him he would be there in about ten minutes.

Martinez testified that he drove to the Pulaski Skyway Bridge and went up and down the bridge about five times looking for Gonzalez.  He also tried to call Gonzalez a number of times but there was no answer.  When Martinez called Gonzalez's sister to tell her he could not find Gonzalez, she told him not to worry about it, so Martinez went home.  Martinez said he assumed Gonzalez either called someone else for a ride or he was arrested.

While speaking with Gonzalez, Martinez thought he was intoxicated.  He deduced this because of his prior experiences with Gonzalez when he had seen him behaving in a belligerent manner while drinking.  He conceded that if someone had never met Gonzalez before, one could conclude that he was just an angry person and not necessarily intoxicated.

7

Martinez was not told there had been an accident or that the truck was inoperable. He assumed it was a motor vehicle stop and the officers were not permitting Gonzalez to drive.

At 3:42 a.m., 9-1-1 received a call reporting a motor vehicle accident on the eastbound side of the Lincoln Highway Bridge. Gonzalez had been struck by defendant Eman Ahmed[4] as she was driving her car in the middle lane on the eastbound side of the bridge.

During her deposition, Ahmed stated it was drizzling and she was using her wipers. She first noticed Gonzalez when he was about four feet from her vehicle – walking in a westbound direction towards her car in the middle of the road. Ahmed applied her brakes and swerved her car to the left in an attempt to avoid hitting Gonzalez. However, the right passenger side of Ahmed's vehicle struck Gonzalez, killing him. The investigating officers estimated that the accident occurred approximately 1500 feet east of where the officers had left Gonzalez twenty minutes earlier. Gonzalez was 900 feet away from the Shell station.

---

[4] Plaintiff resolved its claims with defendants Ahmed and Mansour, the owner of the vehicle, prior to the summary judgment motion.

Prior to Ahmed, occupants of another car travelling on the bridge had noticed Gonzalez on the highway. Andrew Rodriguez stated he saw Gonzalez in the right-hand lane walking into the middle of the road. He described Gonzalez as "stumbling," and not of his "proper mind." He assumed Gonzalez was drunk. Rodriguez moved to the left to avoid striking Gonzalez. As he did so, he saw a car coming up behind him on the right side, pass his car and hit Gonzalez.

The autopsy performed on Gonzalez revealed that his blood alcohol level was 0.215. Plaintiff's expert toxicologist opined that Gonzalez's blood alcohol level was 0.20 when he encountered the officers on the bridge. At this level, two-and-a-half times higher than the legal limit for driving, the toxicologist concluded that Gonzalez would have been visibly intoxicated.

Defendants moved for summary judgment, contending they were immune from liability under several provisions of the TCA – N.J.S.A. 59:2-4 and N.J.S.A. 59:3-5, absolute immunity for the failure to adopt or enforce the law; N.J.S.A. 59:2-3(a) and N.J.S.A. 59:3-2(a), absolute immunity for injuries resulting from the exercise of judgment or discretion; N.J.S.A. 59:5-5, unqualified immunity from claims for the failure to arrest or detain; N.J.S.A. 59:5-4, immunity for claims alleging the failure to provide protection; and

N.J.S.A. 59:3-3, qualified immunity for acts performed in good faith to enforce the law. Plaintiff asserted the acts taken by the officers were ministerial and, under N.J.S.A. 59:2-3 and N.J.S.A. 59:3-2, the officers and the public entities were not immunized for the negligent performance of a ministerial act.

In a written opinion and order of August 8, 2018, the trial judge granted summary judgment, finding the officers had conducted their duties in good faith. The judge relied on Morey v. Palmer, 232 N.J. Super. 144, 152-53 (App. Div. 1989), in concluding the officers had no duty to remove Gonzalez from the highway. He stated, "They offered to give Mr. Gonzalez a ride and secured a ride with a family member before leaving him behind the guard rail." Therefore, defendants' actions were immunized under N.J.S.A. 59:3-3. The judge further found the officers were not required to take Gonzalez to an intoxication treatment facility under N.J.S.A. 26:2B-16 because there were no outward signs that he was intoxicated.

On appeal, plaintiff contends the trial court erred in granting summary judgment because under the TCA, a police officer may be liable for the negligent performance of his or her ministerial acts; therefore, the officers were not immune from liability under any of the provisions of the TCA. Plaintiff further

asserts the court erred in finding the "officers had the discretion to abandon an intoxicated victim of a motor vehicle accident on a dark, rainy highway bridge."

In our de novo review of an order granting summary judgment, we apply the same standard as the trial court. Green v. Monmouth Univ., 237 N.J. 516, 529 (2019) (quoting Davis v. Devereux Found., 209 N.J. 269, 286 (2012)). Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). To determine whether there was a genuine issue of fact, we "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).

In granting summary judgment, the motion judge determined that defendants enjoyed the benefits of the TCA. The TCA extends immunity to public employees for various activities including: the exercise of judgment or discretion vested in him or her, N.J.S.A. 59:3-2; the good faith execution or

11

enforcement of law, N.J.S.A. 59:3-3; and the failure to adopt or enforce any law, N.J.S.A. 59:3-5. These specific grants of immunity are subject to a general exception that withholds immunity when the public employee's conduct "was outside the scope of his [or her] employment or constituted a crime, actual fraud, actual malice or willful misconduct." N.J.S.A. 59:3-14(a). Also, the TCA does not "exonerate a public employee for negligence arising out of his [or her] acts or omissions in carrying out his [or her] ministerial functions." N.J.S.A. 59:3-2(d).

Plaintiff asserts the evidence presents numerous issues of fact that precluded the grant of summary judgment. Plaintiff further contends that when the officers responded to the scene of a motor vehicle accident, they were performing a non-discretionary ministerial act – the requirement to render aid to Gonzalez. The duty to assist Gonzalez included staying with him until he was safe. In failing to do so, and instead leaving Gonzalez – an intoxicated person on a dark bridge on a heavily-traveled highway in the early morning hours of a rainy night – the officers were negligent in the execution of their duties.

A-5751-17T2

Defendants contend that the officers engaged in discretionary conduct because they used their judgment in handling a publicly intoxicated person.[5] They assert there were no disputes of any material facts.

A "discretionary act . . . calls for the exercise of personal deliberations and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." S.P. v. Newark Police Dep't, 428 N.J. Super. 210, 230 (App. Div. 2012) (alteration in original) (citation omitted). "In contrast, a ministerial act is 'one which a person performs in a given state of facts in a prescribed manner in obedience to the mandate of legal authority, without regard to or the exercise of his own judgment upon the propriety of the act being done.'" Id. at 231 (quoting Morey, 232 N.J. Super. at 151).

We have stated that police have a duty to respond to accident scenes and render assistance. Praet v. Sayreville, 218 N.J. Super. 218, 223 (App. Div. 1987). In executing this duty, police officers "are as much liable for their negligence . . . as they would be for the negligent performance of any other

_____

[5] Although both officers stated they did not detect any signs of intoxication, defendants conceded Gonzalez was intoxicated for the purposes of the summary judgment application and the motion judge presumed Gonzalez was intoxicated in his consideration of the case.

administrative or ministerial duty imposed upon them by their employment."
Ibid.

Here, defendant officers both stated they were dispatched to a motor vehicle accident. Therefore, their response to the 911 call and arrival at the scene was a ministerial duty and triggered an exposure to liability if their performance of the ministerial duty was negligent. Suarez v. Dosky, 171 N.J. Super. 1, 9-10 (App. Div. 1979). "[P]olice officers do not enjoy immunity for negligent performance of ministerial duties." Morey, 232 N.J. Super. at 149 (citing Praet, 218 N.J. Super. at 223).

The motion judge did not make a determination whether the officers' actions regarding Gonzalez were ministerial or discretionary. He instead compared the circumstances to the factual presentations in Morey and Suarez and concluded that Morey was analogous. We disagree and conclude Suarez is the controlling precedent.

In Suarez, state troopers responded to an accident which occurred at 10:30 p.m. on Interstate 80. 171 N.J. Super. at 5. The vehicle was inoperable, and the troopers called a tow truck. Id. at 5-6. The family requested the troopers escort them from the highway or call for a taxi. Id. at 6. The officers refused. Ibid. After the troopers left, the family began to walk along the highway toward an

14

exit. Ibid. The mother and a small child were struck and killed by passing cars minutes after the officers refused to assist them. Ibid.

In our decision affirming the jury verdict in favor of plaintiffs, we found the troopers were performing a ministerial duty in responding to the accident, which included rendering aid. Id. at 9-11. Therefore, N.J.S.A. 59:5-4 was not applicable and the TCA did not provide them immunity from liability for the "unfortunate results of their negligently executed ministerial duties." Id. at 9-10 (citation omitted); see also Ojinnaka v. City of Newark, 420 N.J. Super. 22, 34-37 (Law. Div. 2010) (finding that a police officer has a duty to render emergency assistance to victims of automobile accidents and any negligence in the officer's actions is not immunized under N.J.S.A. 59:5-4 or as a discretionary decision under N.J.S.A. 59:2-3(a) or 59:3-2(a)).

In contrast, in Morey, the police were not responding to a motor vehicle accident. 232 N.J. Super. at 147. There, they reported to a call that an intoxicated pedestrian was in the middle of the road causing a "traffic hazard." Ibid. Upon arrival at the scene, the officer observed a person staggering in the middle of the road. Ibid. The officer concluded the person was intoxicated and ordered him to leave the roadway. Ibid. The person did so. Ibid. The officer left the scene. Ibid. Over three and a half hours later, the same individual was

struck and killed by a truck – a quarter of a mile from the place where the officer had earlier encountered him. Ibid.

Plaintiff's administratrix filed suit against the police officer and the municipality. Ibid. The trial court granted the defendants' summary judgment motion. Ibid.

On appeal, this court affirmed, finding the police officer acted within his discretion when he determined the decedent was not incapacitated and ordered him out of the roadway. Id. at 150, 154-55. The court noted that the officer "was not responding to an accident scene. Decedent was evidently able to understand, respond to and comply with [the officer's] orders to leave the highway." Id. at 150. We stated that the officer "was only duty-bound to remove decedent to an intoxication treatment facility if he determined that decedent was incapacitated." Ibid. (emphasis in original).

In analyzing the officer's conduct in Morey under the TCA, we found the officer's conduct was immunized under N.J.S.A. 59:3-3 (extending immunity to public employees for the good faith execution or enforcement of law), N.J.S.A. 59:3-2(d) (extending immunity to public employees for the exercise of discretion of how to utilize or apply existing public resources in the face of competing demands) and N.J.S.A. 59:3-5 (extending immunity to public

16

employees for the failure to adopt or enforce laws). Id. at 152, 154. We also considered the specific immunity under N.J.S.A. 26:2B-16. Id. at 154. We reasoned that, "even if [the officer] was negligent in determining whether decedent was incapacitated, so long as he made that determination in good faith[,] N.J.S.A. 59:3-3 . . . protect[s] him from liability." Ibid. (citation omitted).

As noted, the trial judge relied on Morey and found defendants' actions were immunized under N.J.S.A. 59:3-3 because the officers performed their duties in good faith. However, Morey was not the applicable law as it does not address the ministerial duty owed by police officers when responding to a motor vehicle accident. Moreover, N.J.S.A. 59:3-3 is inapplicable under these circumstances where the officers were performing ministerial acts. There was no issue presented here of executing or enforcing a law. See Del Tufo v. Twp. of Old Bridge, 278 N.J. Super. 312, 326 (App. Div. 1995).

The controlling issue is whether the officers satisfied their ministerial duty to render assistance to Gonzalez after his motor vehicle accident. In light of the extensive conflicting factual evidence regarding Gonzalez's behavior, his conversations with the officers and Martinez, the circumstances of the inoperability of his car, the officers' version of their exchange with the

dispatcher and the assessment of the area where Gonzalez was left, a determination whether the officers executed their ministerial duties negligently could not be made on the summary judgment record. That issue must be resolved by a factfinder at trial. For the reasons stated, the immunities under N.J.S.A. 59:2-3(a), 59:2-4, 59:3-2(a) and (d), 59:3-3, 59:3-5, 59:5-4 and 59:5-5 are not available to defendants.

Reversed and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5751-17T2