**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1199-23

EVELYN AVILES, individually,
and as Administrator of the
ESTATE OF CHRISTOPHER
GARCIA, and JEFFREY GARCIA,

     Plaintiffs-Appellants,

v.

CITY OF HOBOKEN, HOBOKEN
POLICE DEPARTMENT, and
HOBOKEN HOUSING
AUTHORITY,

     Defendants-Respondents.

_____

Argued April 3, 2025 – Decided April 21, 2025

Before Judges Natali, Walcott-Henderson, and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-2210-23.

Eric J. Warner argued the cause for appellants (Law Office of Eric J. Warner, LLC, attorneys; Eric J. Warner, of counsel and on the briefs).

Christopher K. Harriott argued the cause for respondents City of Hoboken and Hoboken Police Department (Florio Kenny Raval, LLP, attorneys; Edward J. Florio, of counsel and on the brief; Christopher K. Harriott and Ryan Renzulli, on the brief).

David F. Scheidel II argued the cause for respondent Hoboken Housing Authority (Keenan & Doris, LLC, attorneys; Ian C. Doris, of counsel and on the brief; David F. Scheidel II, on the brief).

PER CURIAM

Plaintiffs Evelyn Aviles, individually and as administrator of the estate of Christopher Garcia,[1] and Jeffrey Garcia, appeal from the November 22, 2023 order granting defendants' motions to dismiss their complaint with prejudice for failure to state a claim pursuant to Rule 4:6-2(e).  We affirm in part and reverse in part.

I.

We summarize the facts as alleged in plaintiffs' complaint.  On September 25, 2022, at approximately 3:00 a.m., Christopher was shot and killed near a housing complex owned and controlled by defendants City of Hoboken (Hoboken) and the Hoboken Housing Authority (Housing Authority), located at

---

[1]  We refer to Christopher and Jeffrey Garcia by their first names because they share a common surname, intending no disrespect.

501 Marshall Drive, Hoboken (the premises). The premises "was patrolled and surveilled (or was supposed to be patrolled and surveilled) by" defendant Hoboken Police Department (HPD).

"For . . . several months leading up to the shooting, a makeshift stand was routinely operated for the illegal sale of alcoholic beverages outdoors late into the night and into the early morning hours" on the premises. The "stand was commonly situated at or about the . . . [b]asketball [c]ourt." It "caused the local residents to congregate into the early morning hours and become inebriated in public, resulting in frequent physical fighting and similar mayhem."

"Following . . . physical fighting amongst several of said congregants" that "had been initiated by [Christopher's] shooter, [Christopher] attempted to quell the shooter's aggression toward the others." "As the shooter engaged [Christopher], [he] punched the shooter in the face." The shooter then "ran to a vehicle, obtained a firearm," and shot Christopher. Christopher's brother, Jeffrey, was present and witnessed the shooting.

"[A]t no time did [d]efendants attempt to shut down or . . . in any way charge the proprietor of the illegal stand, which was routinely set up in plain view" and "created an unstable and highly dangerous situation, which eventually resulted in [Christopher's] death." Hoboken and the Housing Authority "failed

3

to maintain and control real property in their ownership and possession, allowing a dangerous condition to arise – the open and obvious illegal sale of alcohol at a large makeshift stand upon said entities' real property." HPD, "which receives federal assistance to patrol and surveil the [premises], failed to terminate the illegal and ongoing sale of alcohol, . . . which had been occurring at the same location . . . [for] months prior to the shooting."

Plaintiffs allege causes of action for survivorship, wrongful death, and negligent infliction of emotional distress. The Housing Authority moved to dismiss, arguing: (1) plaintiffs failed to allege a dangerous condition of public property; (2) the alleged illegal use of the property was not reasonably foreseeable; (3) the actions alleged were not palpably unreasonable; and (4) it is immune from liability for failure to provide supervision of a public recreation facility pursuant to N.J.S.A. 59:2-7.

Hoboken and HPD moved to dismiss, arguing: (1) they cannot be liable for the alleged dangerous condition of public property because they do not own or control the premises; and (2) they are entitled to absolute immunity for failure to provide police protection pursuant to N.J.S.A. 59:5-4. They argued plaintiffs "failed to set forth any facts which established that HPD, or its officers, had a

A-1199-23

ministerial duty to immediately remove the makeshift liquor store from the premises."

On November 22, 2023, after hearing oral argument, the court entered an order granting defendants' motions to dismiss with prejudice supported by an oral opinion. The court found Hoboken and HPD are entitled to absolute immunity pursuant to N.J.S.A. 59:5-4, stating:

> The plaintiff[s'] argument is that they should have had cops there. They should have known about the liquor, they should have moved in, they should have exercised a decision, not a mandate; there[ is] no legal duty to have cops there. . . .
>
> . . . .
>
> That is not a ministerial act . . . . There is no prescribed manner for how they should have dealt with liquor on a basketball court. There is no legal authority . . . that they had to obediently follow without regard to exercising judgment or discretion. . . . That would just blow out of the water the immunity provided under [N.J.S.A.] 59:5-4.

The court also found plaintiffs failed to allege a viable cause of action based on a dangerous condition of public property. It reasoned pursuant to N.J.S.A. "59:4-1(a), a dangerous condition is defined as a condition of the property that creates a substantial risk of injury when the property is used with due care. This definition refers to the physical condition of property, not to

activities on the property." "Presence on public property of persons with criminal intent or purpose cannot constitute a dangerous condition within the meaning of" the statute.

On appeal, plaintiffs argue the court erred by finding they did not allege a dangerous condition of public property. Plaintiffs also argue they adequately pleaded defendants' employees negligently performed ministerial duties. Specifically, "[d]efendants' failure to shut down the . . . stand was due to a negligent or wrongful act or omission of one of their employees pursuant to N.J.S.A. 59:4-2(a)." Plaintiffs contend the trial court "erred by characterizing [their] arguments" as "'allocation of police force, et cetera'" and defendants "'should have had cops there.'"

Plaintiffs assert defendants "ha[d] a duty to shut down the . . . stand because it was illegal," and the "duty to shut down the . . . stand once discovered was ministerial." They argue they "are entitled to discovery to determine . . . whether there were prior reports of fights or other mayhem" because defendants "faced with reports of violent and intoxicated persons causing a fight similar to those at the . . . stand, . . . have a duty to respond and investigate it." Plaintiffs also contend they should be permitted to conduct

discovery relating to the Housing Authority's claim it does not provide security services at the premises.

## II.

"Rule 4:6-2(e) motions to dismiss for failure to state a claim upon which relief can be granted are reviewed de novo." Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021) (citing Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019)). In considering a Rule 4:6-2(e) motion, "[a] reviewing court must examine 'the legal sufficiency of the facts alleged on the face of the complaint,' giving the plaintiff the benefit of 'every reasonable inference of fact.'" Ibid. (quoting Dimitrakopoulos, 237 N.J. at 107). The test for determining the adequacy of a pleading is "whether a cause of action is 'suggested' by the facts." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (quoting Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 192 (1988)).

## A.

We are satisfied the court correctly determined plaintiffs failed to set forth a viable claim based on an alleged dangerous condition of public property and properly granted defendants' motions with prejudice on that basis.

The Torts Claims Act (TCA) governs public entity liability in New Jersey. "The guiding principle of the [TCA] is that 'immunity from tort liability is the general rule and liability is the exception . . . .'" Coyne v. State, Dep't of Transp., 182 N.J. 481, 488 (2005) (quoting Garrison v. Twp. of Middletown, 154 N.J. 282, 286 (1998)). This is because "a coordinate branch of government should not be second-guessed by the judiciary for high level policy decisions." Thompson v. Newark Hous. Auth., 108 N.J. 525, 534 (1987).

Under the TCA,

> [a] public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
>
> a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
>
> b. a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.
>
> Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.

8

[N.J.S.A. 59:4-2.]

A plaintiff asserting a tort claim against a public entity for injuries allegedly caused by a dangerous condition of property must present evidence satisfying each element to support a cause of action. Polyard v. Terry, 160 N.J. Super. 497, 505 (App. Div. 1978).

"A dangerous condition . . . refers to the 'physical condition of the property itself and not to activities on the property.'" Wymbs ex rel. Wymbs v. Twp. of Wayne, 163 N.J. 523, 532 (2000) (quoting Levin v. Cnty. of Salem, 133 N.J. 35, 44 (1993)). "[A] dangerous condition of property may be found to exist when an unreasonable risk of harm is created by the combination of a defect in the property itself and the acts of third parties." Longo v. Aprile, 374 N.J. Super. 469, 474-75 (App. Div. 2005) (alteration in original) (quoting Roe by M.J. v. N.J. Transit Rail Operations, Inc., 317 N.J. Super. 72, 79 (App. Div. 1998)).

"[T]he mere presence . . . of persons with criminal intent or purpose does not constitute a dangerous condition within the meaning of the" TCA. Rodriguez v. N.J. Sports & Expo. Auth., 193 N.J. Super. 39, 44 (App. Div. 1983). Similarly, when one's injury is the direct result of dangerous conduct, not a physical defect in the property, the public entity is not liable. Levin, 133 N.J. at 47.

"Whether property is in a 'dangerous condition' is generally a question for the finder of fact." Vincitore ex rel. Vincitore v. N.J. Sports & Expo. Auth., 169 N.J. 119, 123 (2001). Nonetheless, that determination is subject to the court's preliminary assessment of whether a reasonable factfinder could conclude from the evidence presented by plaintiff that the property was in a dangerous condition. Id. at 124.

Accepting plaintiffs' allegations as true and giving them every reasonable inference of fact, they failed to allege a dangerous condition of public property as contemplated by the TCA. Plaintiffs allege the illegal "makeshift stand" was located "upon [defendants'] real property" and was "routinely set up" in plain view and "commonly situated at or about the . . . [b]asketball [c]ourt." Plaintiffs allege transient, illegal conduct regularly occurring on public property, not a dangerous condition of the property itself.

Plaintiff's reliance on Roe is not persuasive. In that case, we concluded N.J. Transit could be liable for enhancing pedestrians' risk of assault by bolting a gate open and inviting them to utilize a shortcut created by the open gate. 317 N.J. Super. at 81-82. We noted "[i]t is well-settled that a dangerous condition of property may be found to exist when an unreasonable risk of harm is created

by the combination of a defect in the property itself and the acts of third parties." Id. at 79.

Plaintiffs' reliance on Saldana v. DiMedio, 275 N.J. Super. 488 (App. Div. 1994), and Foster v. Newark Housing Authority, 389 N.J. Super. 60 (App. Div. 2006), is unconvincing for similar reasons. In Saldana, we concluded the City of Camden could be liable for fire damage caused by fires originating in abandoned, dilapidated buildings owned by the city. 275 N.J. Super. at 506. We noted where "'an owner . . . has kept [their] premises in an unsafe and dangerous condition . . . [they] may be held answerable for the damage caused by the spread of the fire even though such fire may have been started by the act of a third person." Id. at 498. In Foster, we determined the Newark Housing Authority could be liable for a shooting that allegedly occurred because its "buildings had locks that the [Newark] Housing Authority installed to improve security but had not made operational." 389 N.J. Super. at 64.

In each of these cases, a physical defect in the property itself—gate bolted open; abandoned, dilapidated buildings; and non-operational locks—combined with the acts of third parties, constituted a dangerous condition of public property. In this case, plaintiffs do not allege the combination of a defect in the property itself and the acts of third parties. Rather, they allege the illegal

conduct of third parties is the defective condition. To assert a viable claim, plaintiffs must allege a defect in the property itself combined with the acts of third parties created an unreasonable risk of harm. "[T]he mere presence . . . of persons with criminal intent or purpose does not constitute a dangerous condition with the meaning of the" TCA. Rodriguez, 193 N.J. Super. at 44.

B.

We conclude, however, plaintiffs set forth viable claims based on alleged negligence of defendants and their employees in the exercise of ministerial duties. Therefore, we reverse and remand for discovery on those claims.

The TCA provides "[n]either a public entity nor a public employee is liable for failure to provide police protection service or, if police protection service is provided, for failure to provide sufficient police protection service." N.J.S.A. 59:5-4. The legislative purpose behind N.J.S.A. 59:5-4 "is to protect the public entity's 'essential right and power to allocate its resources in accordance with its conception of how the public interest will best be served, an exercise of political power which should be insulated from interference by judge or jury in a tort action.'" Rodriguez, 193 N.J. at 43 (quoting Suarez v. Dosky, 171 N.J. Super. 1, 9 (App. Div. 1979)).

12

N.J.S.A. 59:5-4 affords immunity for claims "based upon contentions that damage occurred from the absence of a police force or from the presence of an inadequate one." Suarez, 171 N.J. Super. at 9. Decisions concerning "[h]ow many officers a town should employ, how each should be equipped[,] and whether a town should have any police at all are political decisions which should not be made the subject of any tort duty." Ibid.

The TCA also provides public employees and entities are "not liable for an injury resulting from the exercise of judgment or discretion vested in [them]." N.J.S.A. 59:3-2(a); N.J.S.A. 59:2-3(a). These statutes, however, do not exonerate negligence arising out of acts or omissions in executing ministerial functions. N.J.S.A. 59:2-3; N.J.S.A. 59:3-2.

"The standard for liability under the TCA depends on whether the conduct of individuals acting on behalf of the public entity was ministerial or discretionary." Est. of Gonzalez v. City of Jersey City, 247 N.J. 551, 571 (2021) (quoting Henebema v. S. Jersey Transp. Auth., 219 N.J. 481, 490 (2014)). "When a public entity's or employee's actions are discretionary, liability is imposed only for 'palpably unreasonable conduct.'" Ibid. (quoting Henebema, 219 N.J. at 495). Liability for ministerial acts "is evaluated based on an ordinary negligence standard." Ibid. (quoting Henebema, 219 N.J. at 490).

Discretionary acts include "actual, high-level policymaking decisions involving the balancing of competing considerations." Ibid. (quoting Coyne, 182 N.J. at 489). "Ministerial acts . . . 'are those which a person performs in a given state of facts in a prescribed manner in obedience to the mandate of legal authority, without regard to or the exercise of [their] own judgment upon the propriety of the act being done.'" Id. at 571-72 (quoting S.P. v. Newark Police Dep't, 428 N.J. Super. 210, 231 (App. Div. 2012)).

A public entity may be liable for injury caused by the negligent performance of ministerial police duties once the police have undertaken to protect. See, e.g., id. at 575-76; Suarez, 171 N.J. Super. at 10 ("N.J.S.A. 59:5-4 [will] not insulate police officers from unfortunate results of their negligently executed ministerial duties.").

Plaintiffs allege "at no time did [d]efendants attempt to shut down or . . . in any way charge the proprietor of the illegal stand, which was routinely set up in plain view" and "created an unstable and highly dangerous situation, which eventually resulted in [Christopher's] death." Hoboken and the Housing Authority "failed to maintain and control real property in their ownership and possession." HPD, "which receives federal assistance to patrol and surveil the

14

[premises], failed to terminate the illegal and ongoing sale of alcohol . . . which had been occurring at the same location . . . [for] months prior to the shooting."

We are persuaded the court mistakenly characterized plaintiffs' claims as being limited to the failure to provide police protection services subject to absolute immunity pursuant to N.J.S.A. 59:5-4. In fact, plaintiffs' claims are not so limited and include, for example, allegations defendants were responsible for supervision and police protection at the property and were aware of the illegal activity occurring on the premises but failed to address it. In other words, they undertook to provide security and police protection but did so negligently. They also contend the Housing Authority failed to control the premises and they are entitled to discovery on the Housing Authority's claim it does not provide security services. We are satisfied plaintiffs set forth viable claims based on the alleged negligent execution of ministerial duties, and the court incorrectly granted defendants' motions to dismiss those claims with prejudice prior to discovery.

Affirmed in part and reversed in part. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-1199-23